[Civ. No. 19742.   First Dist., Div. Two.   Nov. 22, 1961.]

HAROLD MOSS, Plaintiff and Respondent, v. BERTHA CRANDELL, Defendant and Appellant.

Huovinen & White for Defendant and Appellant.

Janvier, Rutledge & Sharon and Robert S. Rutledge for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a judgment of $13,-618.74 in favor of plaintiff. The parties became romantically interested in each other in 1951. Appellant was a maker of women's coats and suits. Respondent was a carpenter. On or about September 1, 1953, they orally agreed that appellant would finance a pallet manufacturing business and plaintiff would be the manager. Both worked hard in the business and lived very frugally. The business records were not well kept. Differences between the parties eventually arose and

defendant terminated plaintiff's services on February 15, 1959. This action followed shortly. Defendant contends that the amount awarded plaintiff for his services was too much and that the amount of the judgment should be no more than $6,196.99.

A summary of the court's findings of fact follows: that on or about September 1, 1953, plaintiff and defendant entered into an oral agreement whereby it was agreed that plaintiff would aid defendant in setting up a pallet manufacturing business and then manage the same; that defendant would furnish the necessary capital and bear any losses; that plaintiff was to receive one-half of the net profits before taxes; that it was not contemplated that defendant's capital investment would bear any interest or that any part of it was to be returned to her before plaintiff would be entitled to his share of the profits; that plaintiff devoted his entire time to said business; that certain insurance premiums were to be deducted before net profits were computed; that two promissory notes executed by plaintiff to defendant before September 1, 1953, were paid by charging the amounts thereof against plaintiff's account and therefore nothing is due on them except interest in the amount of $720; that the business profits for the period from September 1, 1953, to January 1, 1959, was the sum of $52,697.62 before taxes; that from and after August 31, 1955, the parties agreed that plaintiff would receive a minimum or guarantee of $3,600 per year; that the amount due to plaintiff, after deducting the amounts properly chargeable to him, is the sum of $13,618.74.

At the end of three days of trial, both sides rested. Respective counsel then orally argued the case. It was then agreed that a court-appointed accountant should go over the books and records available and render a report. The court appointed Norman M. Green, a certified public accountant, and in due course he rendered a written report. Green was then called by the court as its own witness and he was also examined by respective counsel. His report was made a part of the record and the case was then taken under submission.

Thereafter, the trial court prepared an "Announcement of Decision," a copy of which is appended to appellant's opening brief. Appellant refers to portions of this "Announcement" several times in her briefs and we will do likewise in this opinion.

In it the trial court states that its "remarks are not intended to be a written opinion by the Court, but are designed to

assist counsel in preparing findings and to show them the basis upon which the decision was reached.''

The court went on to state that it ''has adopted in the main the report of Mr. Green to and including December 31, 1958, which shows a balance due to Moss (respondent) of $13,-981.09.'' As for the period from January 1, 1959, to February 15, 1959, the court stated it was crediting Moss with $1,247.50 as his half of the profits, and charging him with $530.32, ''leaving the balance in his favor of $717.18. This sum added to the figures above resulted in the amount of the judgment.'' The court thus clearly indicated its intention to render a judgment for $13,981.09 plus $717.18, or a total of $14,698.27.

Two things then occurred. Before signing the findings the court apparently realized that it had not deducted the item of $720 which it found should be charged against respondent as interest on the notes referred to in its findings. Therefore, the corrected amount would be $14,698.27 less $720, or $13,-978.27. However, the findings and judgment, as signed, stated the amount to be $13,618.74, which is $359.53 *less* than the amount obviously intended by the court. The error apparently stems from the court's statement at the very beginning of its ''Announcement of Decision'' that ''plaintiff have judgment against defendant in the sum of $14,338.74.'' The error was apparently not discovered and, after the subsequent deduction of $720, resulted in the figure of $13,618.74 being inserted in the findings and the judgment instead of the correct figure of $13,978.27. It is apparent that if the error had been called to the attention of the trial court it would have been corrected. However, appellant cannot complain of this error in her favor and respondent does not.

Appellant complains that no finding was made as to the amount of the net profits made during the period in question or the amount charged against respondent's account. Appellant expressly admits that ''although the trial court's explanation of its reasons cannot be invoked to contradict the findings or judgment, it may be used as an aid to interpretation of an uncertain decision or a discovery of ground thereafter. . . .'' We accept this statement.

The Green report sets forth the profits and losses of the business for the years 1953 through 1958. Loss years were 1953 ($842.49) and 1956 ($1,216.08). Profit years were 1954 ($4,604.28), 1955 ($5,462.60), 1957 ($30,398.32), and 1958 ($14,290.99). The net for this entire period was $52,697.62 and the court expressly so found. The report also shows, under

the caption of "Compensation Due Moss," the sum of $30,-978.09 for the period 1953-1958. This sum is arrived at by adding one-half of the profits for 1954, 1955, 1957 and 1958 to the sum of $3,600 for 1956. The reason why the figure of $30,978.09 applies to the total compensation due respondent, instead of one-half of $52,697.62, is because (1) respondent's compensation was to be computed on an annual basis, without any "carry back" or "carry forward"; (2) appellant was to bear the losses in any year in which there were no profits; and, (3) commencing with the year 1956, respondent was to get a minimum of $3,600 per year. Thus, the court adopted the figure of $30,978.09, instead of one-half of $52,697.62, as the amount of compensation due respondent for his services from 1953 through 1958. It should also be noted that there were credits to respondent for five additional items, not involving compensation, of $10.22, $189.78, $469.71, $150.29 and $70, totalling $890, which, when added to the compensation figure, gave respondent a total credit of $31,868.09 for the period ending December 31, 1958.

The charges against respondent's account are set forth in detail in the Green report. The total is the sum of $17,887 for the period ending December 31, 1958. Three additional items after that date total $130.32. In addition, there must be added a withdrawal of $400 by respondent in 1959 and the interest item of $720, already discussed herein, making a total of the charges against respondent of $19,137.32 for the entire period.

Appellant complains that the trial court had no basis upon which to fix the net profits of the business for the period of January 1, 1959 to February 15, 1959 at $2,495, but the accountants testified that, in the absence of an inventory as of February 15, 1959, the most acceptable method was to apportion the net profit for the year according to the period involved. The net profit for 1959 was $19,972.29 and the court correctly allocated $2,495 of that amount to the first six weeks of that year.

The finding of the trial court was that the amount due to plaintiff, "after deducting the amounts paid to plaintiff by defendant and the amounts properly chargeable to plaintiff by defendant, is the sum of $13,618.74." This is a finding of an ultimate fact, as distinguished from a conclusion of law. (*Nisbet* v. *Rhinehart*, 2 Cal.2d 477, 482 [42 P.2d 71]; of interest in a similar situation, *Morris* v. *Moran*, 179 Cal.App. 2d 463, 470 [4 Cal.Rptr. 27].)

It is completely clear from the record that the trial court accepted the Green figures as to the credits due respondent up to December 31, 1958, added thereto the respondent's share of the 1959 profits, and deducted therefrom the debits itemized in the report, as augmented by the items of $400 and $720, and found the difference between such credits and debits to be what was due to respondent. The basis of the court's ultimate finding was thus made clear and that is all that was required.

Appellant raises the question as to whether the parties intended that respondent's compensation should be computed on an annual profit and loss basis or on the basis of the net profits for the entire period of over five years. As we have demonstrated, the trial court held that it should be computed on an annual basis. That this was the intention of the parties is shown by the conduct of the appellant herself. Appellant called as her witness Mrs. Johnson, a certified public accountant, who testified that she had been employed by appellant in August 1955, to go over the books of the business from the beginning and that she had many conferences with appellant concerning the business affairs. Mrs. Johnson continued to do the accounting work until January or February, 1957, and prepared annual statements covering the years 1953 to 1956, inclusive. As Green stated, she "established a pattern for the calculation of profits due Mr. Moss." The records show a loss of $842.49 for the year 1953. This entire loss was charged to appellant. In the next year, 1954, there was a profit of $4,604.28, and one-half thereof, $2,302.14, was credited to respondent without any deduction or adjustment for the 1953 loss. Again, in 1955, the entire half of the profits for that year was credited to respondent. In 1956, there was a loss of $1,216.08, and the entire amount was charged against appellant. The amount of $3,600 was credited to respondent for that year, in accordance with the oral modification agreed upon by the parties in 1955. For the following years of 1957 and 1958, Green followed the same pattern. That is, the entire one-half of the profits for 1957 was credited to respondent's account and the same procedure was followed for 1958.

It must be remembered that appellant had possession of and access to the business records at all times and she knew that the business profits and losses were not only being computed on an annual basis but that respondent's compensation was likewise being computed on an annual basis. Green testified that in an agreement where the compensation of one party is

to be a percentage of the profits, the normal way is to compute such profits and compensation on an annual basis.

[▮] It is a fundamental rule of construction that acts and conduct of the parties to an agreement may be relied upon by the court when necessary to ascertain their mutual intention or agreement. (*Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 759-760 [128 P.2d 665].)

▮ The last point made by appellant is that interest on her capital investment should be allowed and deducted from net profits before division with respondent. There was no agreement to this effect between the parties and the trial court expressly found as follows: "That it was not contemplated by the agreement that defendant would recover any interest or would be entitled to any interest on the capital or investment that she put into the business or to any return of any monies advanced by defendant to start and operate the business before plaintiff was entitled to 50% of the profits."

This finding is supported by the testimony of respondent and the complete absence of any such item in the business records for the years 1953-1957. Appellant admits that when she went over the business with her certified public accountant, Mrs. Johnson, in the year 1955, she did not even mention the matter of interest on her capital investment.

▮ By 1958, appellant had employed a new accountant. He prepared a written memorandum, dated April 14, 1958, and had respondent sign it. It purported on its face to give respondent a "bonus" of $10,000 as respondent's share of the profits for 1957. Respondent never got any of this "bonus" nor was he credited with any part of it in the judgment which he obtained. As a matter of fact, the item appeared only briefly on the books and was soon reversed out. It was obviously a "tax gimmick" and was not intended nor understood by the parties as a change in their agreement. Appellant testified that the accountant "explained to me, us, something about it, it would save us on the income tax if he set it up that way. I don't know anything about those things. He told me that it was legal to do, so, I don't know." Respondent testified to the same effect.

However, appellant wishes to retain and make use of the following wording included in the memorandum: "In connection with the Ten Thousand Dollar ($10,000) bonus assigned to me as my share of the profit for the 1957 operations, I agree to forego withdrawal and claim on this sum until such time

as you have withdrawn the full amount of your capital investment plus interest @ 6% in cash.''

Appellant argues that this proves an agreement that she was entitled to interest at 6 per cent on her capital investment. We think enough has been said about the circumstances surrounding the memorandum to show that it was not so understood or intended by the parties and that the court was amply justified in finding accordingly.

The judgment is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.